
George C. Paine, II
US Bankruptcy Judge
Dated: 06/19/08



# *IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE*

| | |
|---|---|
| *In Re:* )<br>)<br>*HOLCOMB HEALTH CARE* )<br>*SERVICES,  LLC,* )<br>     *Debtors.* )<br>)<br>*GRADIENT TECHNOLOGIES, LLC* )<br>     *Plaintiff* )<br>)<br>*v.* )<br>)<br>*BARBARA A. MCCULLOUGH* )<br>     *Defendant.* ) | *Case No. 01-04329*<br>*Chapter 11*<br>*Honorable George C. Paine, II*<br><br><br><br>*Adversary Number: 07-301A* |

―――――――――――――――――――――――――――――――――――
## *MEMORANDUM*
―――――――――――――――――――――――――――――――――――

### *I. INTRODUCTION*

This matter is before the court on Gradient Technologies, Inc.'s ("Gradient") motion for summary judgment against Barbara N. McCullough.  For the reasons hereinafter cited, the court GRANTS Gradient's motion.

Although a factually difficult adversary proceeding to navigate without stepping into disputed facts, this is a story largely told through contracts, letter agreements, settlement agreements and other signed documents.   Gradient and McCullough have previously been before this court.  In a 2004 action brought by Holcomb Healthcare Services Inc. (predecessor in interest to Gradient) against various parties, the court ruled that HHCS was the owner of various patents, patents pending, provisional patents,

inventions, technology and know-how including rights to a medical apparatus known commonly as the MagnaBloc.™ Following that decision, other pending, related adversary proceedings were resolved by a July 15, 2005 Settlement Agreement. The Settlement Agreement was signed by all the various parties including Gradient and McCullough.

The Settlement Agreement, provided, among other things, that:

> 3.6 <u>Matters Relating to Certain Defendants</u>
> . . .
> (b) In consideration of the mutual releases executed and delivered by HHCS in favor of the Insiders pursuant to the terms of this Agreement, each Insider shall, on or before August 1, 2005, make in favor of and deliver to HHCS a promissory note in the amount of $20,000. . . which shall be effective only as of the Closing Date, bear interest at a rate equal to prime plus one percent, and shall be due and payable on the date of a Project Termination (as defined in the Letter of Intent); provided, however that (I) if on or before the date of a Project Termination (as defined in the Letter of Intent) all payments that Demeter has paid, or caused to be paid, to HHCS or the Trust Account pursuant to Section 3.3(c) of this Agreement, Section 3.3(d) of this Agreement or the Note, taken together, aggregate $3,000,000 or more, then HHCS shall cancel all promissory notes made and delivered pursuant to Section 3.6(b) and return the same to the Insiders, and (ii) if the notes are not required to be cancelled pursuant to the immediately preceding clause, then at such time as all payments that Demeter has paid, or caused to be paid, to HHCS or the Trust Account pursuant to Section 3.3(c) of this Agreement, Section 3.3(d) of this Agreement or the Note, taken together aggregate $3,000,000 or more, HHCS shall pay or cause to be paid, to each Insider a cash payment equal to $20,000. Demeter shall unconditionally guarantee the prompt payment when due of any and all amounts owing under the promissory notes contemplated by this Section 3.6(b). If the payments to HHCS contemplated by Section 3.3(c)(I) of this Agreement are made, then HHCS shall deliver to the Insiders, pursuant to terms of the assignment agreements executed and delivered at Closing, each such Insider's respective Insider Interests (other than any interest in HHCS) that were transferred to HHCS at Closing.

Pursuant to Section 3.6, Barbara McCullough executed a promissory note which provides in part:

> 9. <u>Payment of Expenses</u>. All costs, fees and expenses incurred in connection with the negotiation and execution of this Note and the

> consummation of the transactions contemplated hereby shall be bourne by the party incurring such costs, fees and expenses; provided, however, that upon an Event of Default, Holder shall be entitled to reimbursement of all reasonable expenses incurred in the enforcement of this Note, if successful, including reasonable attorneys' fees.

The Settlement Agreement also contains a provision forbidding each and every party to the Settlement Agreement to take, or to cause others to take, any action which is, or may reasonably be considered to be, adverse to the interest of any other party in respect to the subject matter of the Settlement Agreement. The provision reads:

> 3.7 <u>No Disparagement</u>. Each of the Parties agrees that i[t] shall not . . . (ii) take any action or encourage the taking of any action by others which is, or may reasonably be considered to be adverse to the interest of any other Party in respect to the subject matter of this Agreement. Nothing in this section shall prohibit the reporting of factual information in the regular course of business. . . .

Serving as the basis for the Settlement Agreement was the April 12, 2005 Letter of Intent referred to throughout the Settlement Agreement. The Letter of Intent provided what all parties anticipated would be the funds to pay amounts owed to Gradient under the Settlement Agreement. Essentially, Demeter Systems, LLC, also a party to the Settlement Agreement, was to provide certain technology and know-how referred to as "Due Diligence Material" to Clorox Company to allow Clorox to investigate the technology for possible use in its' products. The terms of the Letter of Intent are intimately tied to the Settlement Agreement and provide in relevant part as follows:

> 1. <u>Exploratory Phase</u>. From and after the date hereof until the earlier of the execution of a Definitive Agreement (as defined in paragraph 2) or the abandonment of the Project by any party, Demeter shall afford to Clorox the access and information contemplated by paragraph 5 hereto in order for Clorox to reasonably investigate the potential effectiveness of the Liquid Fuel Technology. . . Clorox shall use its commercially reasonable efforts to complete its investigation of the Project as promptly as possible. On or before the date that is five calendar weeks from the date that Clorox receives the Principal Due Diligence Materials, as defined in paragraph 5,

> and agrees with Demeter on a testing protocol for this Exploratory Phase, which Clorox shall follow but which Clorox may supplement with additional tests, in its sole discretion (the "Notification Date") Clorox may notify Demeter Systems in writing that it is satisfied with its investigation hereunder and prepared to proceed with the Project (a "Confirmation Notice"). If Clorox shall fail to deliver a Confirmation Notice to Demeter Systems by the close of business on the Notification Date, or if Clorox notifies Demeter Systems in writing before the execution of a Definitive Agreement that it does not wish to proceed with the Project, in either such case, there shall be a Project Termination.

By all accounts, Demeter was unable to provide the "Due Diligence Materials" to Clorox. Because Demeter could not provide the technology to Clorox, Clorox never gave a "Confirmation Notice."

Despite the failed aspirations in the Letter of Intent, no real action occurred until January 15, 2007. At that point, several of the original signatories to the Settlement Agreement entered into a modification of these parties' original obligations. With respect to HHCS (Gradient), the Agreement provides in relevant part:

> 1. <u>HHCS Standstill</u>
> A. Through the period ending the earlier of (1) January 31, 2008, (ii) the date on which Demeter successfully raises an aggregate of $5,000,000 in new funds following the date of this Agreement from the issuance of debt or equity to third parties, and (iii) HHCS properly terminates the period as contemplated by Section 2E of this Agreement (such period, the "Standstill Period"), HHCS shall not assert any claims or enforce or seek to enforce any rights or remedies that it may have, nor declare an event of default or breach, under the Settlement Agreement or under any Related Agreements in any case relating to obligations to make any payments to HHCS or resulting from any failure to may any payments including, without limitation, those obligations contemplated by Sections 3.3, 3.4, 3.6(b) and 3.6(g) of the Settlement Agreement . . .
>
> B. In furtherance of the foregoing HHCS agrees that during the Standstill Period (i) not to assert a Project Termination has occurred . . .

Section 3.18 allowed the parties to alter the terms of the Settlement Agreement by providing as follows:

> 3.18 <u>Amendment.</u> This Agreement may not be changed, waived, discharged or terminated (except as explicitly provided herein), in

> whole or in part, except by an instrument in writing signed by the Party against whom enforcement of such change, waiver, discharge or termination is sought.

After entering into the January 15, 2007 Standstill Agreement, Demeter was given another chance to develop the "Due Diligence Materials," but again, to no avail. By November 2007, Demeter and Gradient entered into another Agreement (the "November 16, 2007 Agreement") that essentially resolved all issues resulting from failure of Demeter to meet all aspects of the Settlement Agreement. The Agreement provides in relevant part:

> WHEREAS, Demeter and Gradient are parties to (i) that certain Settlement and Release Agreement, dated July 15, 2005, by and among Demeter, Gradient and other parties thereto (the "<u>2005 Settlement Agreement</u>"), and (ii) those certain Related Agreements (as defined in the 2005 Settlement Agreement), including among others, (x) the Convertible Note (as defined in the 2005 Settlement Agreement), which was issued by Demeter to Gradient as of August 26, 2005 in the principal amount of $15 million and (y) the IP Pledge Agreement (as defined in the 2005 Settlement Agreement); and
>
> WHEREAS, Demeter and Gradient are parties to (i) that certain letter agreement dated January 15, 2007, by and among Demeter, Gradient and other parties thereto (the "Standstill Agreement"), and (ii) those certain additional agreements contemplated by the Standstill Agreement, including among others, the Notes (as defined in the 2005 Settlement Agreement and modified by the Standstill Agreement), which was issued by Demeter to Gradient as of January 15, 2007 in the principal amount of $10 million; and
>
> WHEREAS, Demeter issued the Convertible Note and the Note to Gradient as payment in satisfaction of the disputed ownership rights to the intellectual property identified on the Schedule of Patents attached to the 2005 Settlement Agreement as Exhibit D-1, and Demeter and Gradient determined the respective principal amounts of the Convertible Note and the Note based on their collective views as to the value of satisfaction of such disputed ownership rights; and
>
> WHEREAS, Demeter and Gradient have determined that a more appropriate value to ascribe to the satisfaction of the disputed ownership rights is $1,934,764, in the aggregate; and
>
> WHEREAS, as a result of the foregoing, Demeter and Gradient now wish to (I) amend the Convertible Note to change the principal amount of the Convertible Note from $15 million to $1,160,858.40, and (ii) amend the

> Note to change the principal amount of the Note from $10 million to $773,905.60, and
>
> WHEREAS, Gradient desires to contribute on January 1, 2008 the Amended Convertible Note (as defined below) and the Amended Note (as defined below) to Demeter in exchange for 967,382 newly-issued Class C Shares (as defined in the Third Amended and Restated Limited Liability Company Agreement of Demeter (the "LLC Agreement")), and Demeter desires to issue on January 1, 2008 to Gradient 967,382 newly-issued Class C Shares in exchange for Gradient's contribution of the Amended Convertible Note and the Amended Note to Demeter; . . .
>
> . . .
>
> 4.16 <u>Insider Notes</u>. On or as soon as practicable following, the Closing Date, Gradient shall cancel, or cause to be cancelled, those certain promissory notes made by the Insiders (as defined in the 2005 Settlement Agreement) in favor of, and delivered to, Gradient pursuant to Section 3.6(b) of the 2005 Settlement Agreement . . . <u>provided,</u> however that Gradient's obligations pursuant to this Section 4.16 shall not apply to that one certain Insider identified by Gradient to Demeter on the date hereof as the one Insider whom Gradient refuses to release hereunder (although Gradient does hereby release Demeter from any obligations to guarantee the promissory note issued by such Insider and will hold Demeter harmless from Gradient's refusal to release such Insider hereunder).

Thus, in settling all breaches, noncompliance, defaults or other shortcomings of the Settlement Agreement, Gradient agreed, among other things, to resize the original amounts due, and exchange those Notes for Class C shares in Demeter. All Insider Notes, except for McCullough's Note, were cancelled.

On September 14, 2007, Gradient filed this adversary proceeding against McCullough seeking to enforce provisions of the Settlement Agreement. The Amended Complaint contained two counts.

Count I:

. . .

9. It has come to the attention of Gradient that, notwithstanding the Settlement Agreement, Defendant has engaged in operations in Australia promoting a product that Gradient alleges is identical to MagnaBloc.™ Subsequent to the Defendant's signing of the Settlement Agreement, she flew to Australia and advised Diane and

> Jim Hermans, owners of Optimal Life Pty. concerning the construction of, use of, and marketing of a product know as Qmagnets. Defendant has further assisted in the sales and use of Qmagnets with customers. These actions have resulted in the wrongful sale of Qmagnet products in both Australia and the United States where Gradient has an active licensing agreement in effect with Alticor for sale of MagnaBloc™ products and with which her actions interfere.
>
> . . .

Gradient seeks specific performance of Section 3.7 of the Settlement Agreement (quoted above) which prohibits McCullough from taking action that is or may reasonably be considered to be adverse to Gradient. Gradient asks the court to issue a permanent injunction prohibiting McCullough from any further involvement with Qmagnets and a judgment for costs and expenses, including attorney fees. McCullough denies that she violated the Settlement Agreement in any way.

Gradient's Amended Complaint, in Count II alleges:

Count II

1. Defendant executed a promissory Note dated August 26, 2005 in the principal amount of $20,000 (the "Note"). . .

2. The Note was executed in connection with the Settlement Agreement and became due and payable upon the Project Termination as defined in Paragraph 3.6(b) of the Settlement Agreement and the Letter of Intent. . .

3. A Project Termination has occurred and accordingly the obligations under the Note are due and payable with interest accruing from the date of the Note.

4. Gradient has not received the $3,000,000 references in Paragraph 3.6(b) that would result in cancellation of the Note.

Gradient seeks, in Count II, payment of the Note plus interest, costs, and expenses including attorney fees. Based on these allegations, Gradient filed a motion for summary judgment alleging no material facts remain in dispute because the issues to be determined are largely governed by the agreements, contracts, and letters that speak for

7-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:07-ap-00301   Doc 81   Filed 06/20/08   Entered 06/20/08 15:27:19   Desc Main
Document     Page 7 of 17

themselves. As such, Gradient contends that it is entitled to summary judgment as a matter of law.

McCullough's position is that material facts remain in dispute as to both counts that prohibit this court from granting summary judgment. As to Count I, McCullough asserts that none of her activities violated the "No Disparagement" provision in the Settlement Agreement, and furthermore, that Section 3.7 is an overly broad, illegal restraint on trade and therefore unenforceable. As to Count II, McCullough contends that: (1) no Project Termination occurred; (2) the McCullough note was cancelled; (3) Gradient has received at least $3,000,000 rendering the McCullough note satisfied; and (4) any variation on the original Settlement Agreement occurred without her consent as required by Section 3.18 of the Settlement Agreement. All of these material facts remain disputed, precluding summary judgment, according to McCullough.

## *II. Discussion*
### *A. Summary Judgment Standard*

Bankruptcy Rule of Bankruptcy Procedure 7056 provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitle to a judgment as a matter of law." On motion for summary judgment, the evidence, all facts, and any reasonable inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

### *B. Counts I and II*

### *1.* *COUNT I*

This court must first determine if any material facts remain in dispute that would prevent this court from deciding Gradient's motion as a matter of law. As to Count I, McCullough denies that she assisted in the development of "Qmagnets," and disputes that her trip to Australia was to assist the Hermans develop "Qmagnets." Although McCullough admits that she provided some information to the Hermans about how to build a "Qmagnet," she submits that the information she gave to them was not ever used in production of the MagnaBloc,™ or was otherwise publically available.

The court agrees with McCullough that facts remain in dispute as to such details as: (1) the extent McCullough's trip was personal versus her assistance to the Herman's Qmagnet project; (2) what specific information she provided to the Herman's; and (3) the extent of McCullough's involvement with the production or development of Qmagnets. However, the court finds none of these facts are "material" facts.

The defendant's own admissions establish that: McCullough went to Australia, paid for by the Herman's; McCullough traveled in part to "review the website" about Qmagnets; McCullough provided construction information to the Herman's pertaining to MagnaBloc™ even if such information was never actually used in MagnaBloc™ assembly; McCullough provided "editing advice" about Qmagnets; and that McCullough knew the MagnaBloc™ and Qmagnets were very similar. Based on these undisputed facts, and the court's interpretation of the "No Disparagement" provision in the Settlement Agreement as a matter of law, it is clear summary judgment is warranted in favor of Gradient.

Section 3.7 prohibited McCullough from taking any action "which is, or may

reasonably be considered to be" adverse to Gradient's interest. The interpretation of a written contract is a matter of law. ***NSA DBA Benefit Plan, v. Connecticut Gen. Life Ins. Co.***, 968 S.W.2d 791 (Tenn. Ct. App. 1997). The cardinal rule in the construction of contracts is to ascertain the intent of the parties. ***West v. Laminite Plastics Mfg. Co.***, 674 S.W.2d 310 (Tenn. Ct. App . 1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the court's function to interpret the contract as written according to its plain terms. ***Petty v. Sloan***, 277 S.W.2d 355 (Tenn. 1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Bob Pearsall Motors, Inc. v. Regal-Chrysler Plymouth, Inc.***, 521 S.W.2d 578 (Tenn. 1975).[1]

McCullough's actions could "reasonably be considered" to be adverse to Gradient's interests. McCullough's own admissions make Gradient's case. McCullough traveled to Australia at the expense of a potential MagnaBloc™ competitor, and provided information, assistance and/or knowledge to that likely competitor. The court finds therefore, as a matter of law, that McCullough's actions violated Section 3.7 of the Settlement Agreement. As such, the Settlement Agreement entitles Gradient to specific performance as a remedy, including an injunction prohibiting McCullough's further involvement with Qmagnets.

McCullough argues that even if the court could get past the materially disputed facts in Count I, Section 3.7 is nonetheless unenforceable as a matter of law as an illegal restraint on trade. She argues that Section 3.7 is the broadest anti-competitive covenant possibly conceivable and therefore unenforceable under the laws of Tennessee. The Tennessee Supreme Court has set for the law governing non-compete provisions in

---

[1] The Settlement Agreement provides that Tennessee law governs.

***Central Adjustment Bureau, Inc. v. Ingram***, 678 S.W.2d 28, 32-33 (Tenn. 1984):

> As a general rule, restrictive covenants in employment contracts will be enforced if they are reasonable under the particular circumstances. ***Allright Auto Parks, Inc. v. Berry***, 219 Tenn. 280, 409 S.W.2d 361 (1966). The rule of reasonableness applies to consideration as well as to other matters such as territorial and time limitations. ***Di Deeland v. Colvin***, 208 Tenn. 551, 554, 347 S.W.2d 483, 484 (1961). Whether there is adequate consideration to support a non-competition covenant signed during an on-going employment relationship depends upon the facts of each case. ***Davies & Davies Agency, Inc. v. Davies***, 298 N.W.2d 127 (Minn.1980).

Under McCullough's reasoning, Section 3.7 is not limited in geographic distance or time and therefore an unreasonable and oppressive restraint.

Gradient counters that Section 3.7 is not an anti-competitive covenant, but is instead a mutually enforceable and mutually agreed upon settlement term commonly found in settlement agreements. Gradient notes that non-compete clauses most often involve employer/employee relationships, and this provision came about as a result of negotiations not involving an unbalanced relationship such as employer/employee.

The court agrees with Gradient. Section 3.7 is not an anti-competitive provision. This is not an employer/employee relationship of unequal bargaining positions. The provision in no way prohibits McCullough from engaging in her chosen profession as a nurse. The provision is equally enforceable by either party, and the provision came about as the result of settlement negotiations, not an mandatorily enforced provision. The United States Court of Appeals for the Seventh Circuit addressed the distinction in a 2004 decision that contained a similar "No Disparagement" provision[2]:

---

[2] The "No Disparagement" provision in the Seventh Circuit case prohibited a former business owner from "directly or indirectly, in public or private, [to] deprecate, impugn or otherwise make any remarks that would tend to or could be reasonably construed to tend to defame" Pitometer or its affiliates, officers, or employees."

11-U.S. Bankruptcy Court, M.D. Tenn.

> Such private gag orders appear to be fairly common. **Wayne N. Outten**, *"Negotiations, ADR, and Severance/Settlement Agreements: An Employee's Lawyer's Perspective,"* 604 PLI/Lit 235, 316-17 (1999); ***see, e.g.***, ***Patlovich v. Rudd***, 949 F. Supp. 585, 594-95 (N.D.Ill.1996) (Illinois law);***Eichelkraut v. Camp***, 236 Ga.App. 721, 513 S.E.2d 267, 268 (1999). . . . ***Cf. John L. Hines, Jr., Michael H. Cramer & Peter T. Berk***, *"Anonymity, Immunity & Online Defamation: Managing Corporate Exposures to Reputation Injury,"* 4 SEDONA CONF. J. 97, 106 (2003); **Laurence H. Reece III**, *"Valuation and Settlement of Business Disputes,"* in Winning Through Settlement: Valuation and Settlement of Business Disputes § 6.5 (Paul G. Garrity ed., Massachusetts Continuing Legal Education, Inc., 2001). The nondisparagement clause in the consulting agreement may thus have been a substitute for a noncompete clause, which would be unenforceable if its duration were "unreasonable," as it might be under Illinois law (which governs disputes arising under the agreement) if it exceeded two or three years, and almost certainly if it exceeded five. **Compare Midwest Television, Inc. v. Oloffson**, 298 Ill.App.3d 548, 232 Ill.Dec. 783, 699 N.E.2d 230, 235 (1998), **and Fister/Warren v. Basins, Inc.**, 217 Ill.App.3d 958, 160 Ill.Dec. 858, 578 N.E.2d 37, 41 (1991), **with Eichmann v. National Hospital & Health Care Services, Inc**., 308 Ill.App.3d 337, 241 Ill.Dec. 738, 719 N.E.2d 1141, 1148 (1999), and **Hamer Holding Group, Inc. v. Elmore**, 244 Ill.App.3d 1069, 184 Ill.Dec. 598, 613 N.E.2d 1190, 1197-1201 (1993). Although the term of the consulting agreement itself was only three years, the nondisparagement clause is by its terms perpetual, which appears to be common, ***see, e.g., Patlovich v. Rudd, supra***, 949 F.Supp. at 594-95, and, so far as we are aware, unexceptionable.

***E.E.O.C. v. Severn Trent Services, Inc.*** 358 F.3d 438, 440-441 (7th Cir. ,2004). In other words, where the parties freely negotiated, in conjunction with their settlement agreement, a mutually enforceable anti-disparagement provision, the court has no basis to set that provision aside. Tennessee courts have set forth limits on non-compete provisions, but there appears to be no basis for objection when parties agree to a "No Disparagement" provision.

As a result, McCullough has not successfully shown material facts in dispute. Gradient has shown, as a matter of law, that it is entitled to specific performance under the 2005 Settlement Agreement. The court, therefore, GRANTS Gradient's motion for summary judgment as to Count I. As such:

1. McCullough is enjoined from any advice or other assistance to Jim and Dianne Hermans doing business as Optimal Life in Brisbane, Australia,

> related to the development and marketing of a magnetic array device such as the one marketed by Optimal Life as the "Qmagnet," or to otherwise publish or otherwise publicly make any statement which is, or may reasonably be considered to be, disparaging of Plaintiff, or its subsidiaries, affiliates, directors, employees, businesses, products, services or reputations, or take any action or encourage the taking of any action by others, which is, or may reasonably be, considered to be adverse to the interest of Plaintiff in respect to the subject matter of its intellectual property, including, but not limited to MagnaBloc,™ patent as defined in that certain Settlement and Release Agreement dated July 15, 2005 (the "Settlement Agreement").

2. This injunction shall not prevent McCullough from the use of any magnetic therapy used to treat pain or illness or for the promotion of general health and wellbeing in her capacity as a registered nurse or in the performance of her duties as an employee of a facility that provides such healthcare services.

## ***2.  COUNT II***

McCullough again argues that Gradient's summary judgment motion cannot be granted because material facts remain in dispute. Specifically, she alleges: (1) no Project Termination occurred; (2) the McCullough note was cancelled; (3) Gradient has received at least $3,000,000 rendering the McCullough note satisfied; and (4) any variation on the original Settlement Agreement occurred without her consent as required by Section 3.18 of the Settlement Agreement. Unfortunately for McCullough, however, each and every fact is either established by the Settlement Agreement, Letter of Intent, contracts, and/or by McCullough's failure to combat the affidavits of Gradient establishing such facts.

First, McCullough contends that no "Project Termination" occurred and therefore the McCullough note never became due. As a factual matter, McCullough never countered Louis Basenese's affidavit stating definitively that a "Project Termination" occurred and Demeter had no further obligations under the Letter of Intent.[3] Mere

---

[3] Louis Basenese is the Chairman and Chief Executive Officer of Demeter Systems, LLC.

unsupported assertions by McCullough that a "Project Termination" did not occur are not enough to overcome Basenese's affidavit. Even more compelling, however, are the parties' documents which speak for themselves. The Settlement Agreement looks to the Letter of Intent to define a "Project Termination." The Letter of Intent declares a "Project Termination" if Clorox fails to perform within five calendar weeks from delivery of the "Due Diligence Materials" from Demeter. Clorox never performed because Demeter could not deliver the "Due Diligence Materials," and the project was terminated. The court finds, that in interpreting the Settlement Agreement and Letter of Intent that a "Project Termination" did occur.

McCullough also submits that her note was cancelled, but she cannot point to any evidence, other than her own belief. Once again, the agreements do the talking. The November 16, 2007 Settlement Agreement cancelled all Insider notes, save one, McCullough's note. Gradient cancelled and returned all Insider Notes, except McCullough's note, and agreed to release Demeter from any guarantee of payment of McCullough's note. McCullough contends that because the November 16, 2007 Agreement does not identify McCullough specifically, it cannot be known if her note was cancelled or not. Gradient has offered the affidavit of John Townsend, CEO of Gradient stating that McCullough's obligations to Gradient were never altered by any of the agreements made subsequent to the 2005 Settlement Agreement. McCullough offers only her opinion that her note was cancelled. The court finds no material facts in dispute as to whether the note was cancelled by the November 16, 2007 Agreement. It was not.

McCullough contends that if it was not cancelled by the November 16, 2007 Agreement, it was cancelled because Gradient has received at least $3,000,000 under the terms of the 2005 Settlement Agreement. McCullough's affidavit states:

> By the terms of the Standstill Agreement and the November 2007 Agreement, the $10,000,000 Demeter Note was amended and restructured in such a way that either: (1) it will be impossible under the provisions of Section 3.6(b) of the Settlement Agreement for the McCullough note to be cancelled and returned by Plaintiff to me; or (ii) Plaintiff has received at least $3 million in consideration for the $10 million Demeter Note and the McCullough Note should have been cancelled and returned by Plaintiff.

McCullough's *opinion* is that Gradient has received at least $3 million resulting in the cancellation of her Insider Note. Gradient produced John Townsend's Declaration stating:

> Under the terms of the Settlement Agreement, Gradient expected to receive a $3,000,000 payment set forth in paragraph 3.3(c) which was to be paid to Demeter by Clorox under the Letter of Intent. . . . [the] payment was never made to Gradient, and accordingly the notes executed by the insiders, including Defendant, were not cancelled by virtue of this provision.

Furthermore, the Standstill Agreement and the November 16, 2007 Agreement are further evidence that Gradient had not received its minimum recovery of at least $3,000,000. The court finds that McCullough failed to put forth any rebuttal to Mr. Townsend's affidavit establishing that the $3,000,0000 benchmark was never reached. The court does not find this material fact to be in dispute.

Finally, McCullough asserts that any amendment to the original Settlement Agreement occurred without her consent as required by Section 3.18 of the 2005 Settlement Agreement. It is true that McCullough is not a signatory on the Standstill Agreement, or the November 16, 2007 Agreement. Those agreements were reached without her consent, but the court finds, that the Settlement Agreement did not require her consent.

Interpretation of Section 3.18 is a matter of law for the court. Section 3.18 provides for a change to the Settlement Agreement to be in writing signed by the party

against "whom enforcement of ***such*** change, waiver, discharge or termination is sought." In other words, in order to change any provision of the Settlement Agreement that affected McCullough, McCullough would have to be a signatory to <u>that</u> change. Any subsequent amendments that were made to this Settlement Agreement were made by parties who were affected by the changes. Both Gradient and McCullough are still governed by the original 2005 Settlement Agreement as that is the document both parties signed. Neither Gradient nor McCullough can reap any benefits nor suffer any harms from any subsequent agreements by other parties where Gradient AND McCullough are not signatories.

Under the terms of the 2005 Settlement Agreement, McCullough gave Gradient a $20,000 Note. The Note became due and payable upon a "Project Termination" as defined in the Settlement Agreement and the Letter of Intent. McCullough left the fate or her liability on this Note in the hands of others from the very beginning, and no subsequent agreement by any party has changed her obligation. When a Project Termination did occur, her note became due. Gradient then agreed in the Standstill not to pursue any of its remedies, including enforcement of the Insider Notes. Finally, in November 2007, when Demeter was still unable to perform under the Letter or Intent or the Settlement Agreement, Demeter and Gradient agreed to "re-settle" their Settlement by mutual agreement. McCullough remained in her original position of potentially owing personally on her Insider Note if Gradient did not receive the minimum amount of funds. Gradient never received the money, and therefore, Gradient sought to enforce the McCullough Insider Note.

Gradient is entitled to summary judgment as to Count II. The court finds that the Note is due and payable and that Gradient is entitled to a judgment for the $20,000 principal, accrued interest at prime plus 1%, costs and attorney fees. The total amount

16-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:07-ap-00301    Doc 81    Filed 06/20/08    Entered 06/20/08 15:27:19    Desc Main
Document      Page 16 of 17

of the judgment shall be dependent upon the court's review of the costs and attorney fees submitted in a proposed order by Gradient within ten (10) days of entry of this Memorandum Opinion.

### *III. CONCLUSION*

The court grants Gradient's motion for summary judgment. No issues of material fact remain in dispute and Gradient is entitled to a judgment as a matter of law. Gradient is entitled to specific performance of Section 3.7 of the Settlement Agreement and the defendant, Barbara N. McCullough is hereby enjoined as specifically provided herein. Furthermore, Gradient is entitled to a judgment on the Insider Note in the principal amount of $20,000, accrued interest at prime plus 1%, costs and attorney fees as specifically set forth above.

It is, THEREFORE, so ordered.
This ____ day of June, 2008.

### *THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

17-U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:07-ap-00301    Doc 81    Filed 06/20/08    Entered 06/20/08 15:27:19    Desc Main
Document      Page 17 of 17